**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NICOLE JOHNSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-3542-L** |
| | § | |
| **DEUTSCHE BANK NATIONAL TRUST** | § | |
| **COMPANY, AS TRUSTEE FOR** | § | |
| **MORGAN STANLEY HOME EQUITY** | § | |
| **LOAN TRUST 2007-1, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated June 11, 2013, this case has been referred for pretrial management. Before the Court for recommendation is *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support*, filed November 30, 2012 (doc. 12). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

This action involves foreclosure of real property located at 4525 Kushla Avenue, Dallas, Texas 75216 (the Property). (doc. 8 at 3.)[1] Nicole Johnson (Plaintiff) alleges that she has been the Property's owner since August 4, 2000. (doc. 1-5 at 8.) On or about October 3, 2006, she allegedly refinanced the Property with First NLC Financial Services, LLC (FNLC) and executed a promissory note for $67,000.00 and a deed of trust securing the note in its favor. (*Id.* at 3, 5.) The deed of trust identified FNLC as Lender and Mortgage Electronic Registration Systems (MERS) as Lender's nominee and beneficiary under the deed of trust. (*Id.* at 5.)

---

[1] Citations to the record refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

A.      **Prior Litigation**

Plaintiff apparently defaulted, and Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Home Equity Loan Trust 2007-I, Deutsche Bank National Trust (Deutsche) foreclosed on the Property.  (*See* docs. 1-5 and 8.)  In June 2011, Deutsche filed a forcible detainer action against Plaintiff in state court.  (docs. 1-5 at 8; 12-1 at 7.)  The state court ruled in Plaintiff's favor and held that she was "entitled to continued possession" of the Property.  (doc. 12-1 at 7.)

On October 19, 2011, Plaintiff filed a *pro se* suit in the U.S. District Court for the Northern District of Texas against several entities, including Deutsche, asserting claims for wrongful foreclosure and violations of the Texas and Federal Constitutions, the Federal Debt Collection Services Act (FDCPA), and "Texas Rule 12."  (doc. 12-1 at 2.)  Attached to Plaintiff's complaint were numerous documents, including news articles relating to MERS, non-judicial foreclosures, and legislative proceedings.  (*See id.* at 3–35.)  Although not explicitly stated, her claims appeared to be based on Deutsche's foreclosure of the Property.  (*See id.*)  On December 28, 2011, the Court dismissed Plaintiff's suit "for failure to prosecute or comply with court orders" due to her failure to respond to the Magistrate Judge Questionnaire (MJQ).  (docs. 12-2; 12-3).

Three weeks before her suit was dismissed, on December 6, 2011, Plaintiff filed for Chapter 13 bankruptcy; the bankruptcy court dismissed her case a few weeks later because she failed "to obtain credit counseling" before filing her petition.  (docs. doc. 12-4 at 2; 12-6 at 2.)  On March 7, 2012, she filed a voluntary Chapter 7 bankruptcy petition.  (doc. 12-7 at 2.)  She submitted her bankruptcy schedules on March 21, 2012, indicating on her "schedule A" that the Property was the only "real property in which [she] ha[d] any legal, equitable, or future interest[s]."  (doc. 12-8 at 5.) In her schedule B, she listed cash, a bank account, furniture, clothing, jewelry, and a vehicle as her

"personal property." (*Id.* at 6–8.)  Plaintiff did not disclose any pending or potential claims against

Defendants in her schedule B, claiming not to have any property in the category of "contingent and

unliquidated claims ... [such as] tax refunds, counterclaims ..., and rights to setoff claims."  (*See id.*

at 7.)  On July 30, 2012, the bankruptcy court discharged Plaintiff's debts and closed her case.  (doc.

12-10 at 2–5.)  The bankruptcy court's  discharge order stated that it did "not determine how much

money, if any, the trustee [would] pay to [Plaintiff's] creditors."  (*Id.* at 3.)

## B.    The Current Litigation

On August 20, 2012, Plaintiff filed this *pro se* action against Deutsche in the County Court

at Law No. 1 of  Dallas County, Texas.  (*See* doc. 1-5.)  In her state court petition, she claimed to

be "the fee simple owner of the [Property]" since August 4, 2000.  (*Id.* at 8.)  She alleged that

"Defendant" (at times identified as "Deutsche Bank") "entered the picture after [she] refinanced [the

Property]" in 2006.  (*Id.*)  She complained that her mortgage loan was "securitized and deposited

into a Trust" for the purpose of converting it into mortgage-backed securities that could be sold "to

large institutional investors."  (*Id.* at 4.)  Claiming that the transfer of the loan and its securitization

were never recorded "with the Dallas County land records," she contended that "Deutsche's actions"

relating to the foreclosure and her attempted eviction "were unlawful and misrepresentative [*sic*] of

the ownership of [her] loan."  (*Id.* at 5–6.)  According to Plaintiff, Deutsche "wrongfully foreclosed

on the property and has since sued [her] for forcible detainer."  (*Id.* at 8.)   The foreclosure was

wrongful because Deutsche did not prove its authority to foreclose on the Property.  (*Id.* at 9.)

Based on Deutsche's alleged involvement in the foreclosure and her attempted eviction,

Plaintiff asserted claims against it for negligent misrepresentation, violations of the Texas Debt

Collection Practices Act (TDCPA), and trespass to try title.  (*Id.* at 6–9.)  She requested a temporary

restraining order (TRO) to prevent Deutsche from obtaining possession and evicting her from the Property, (*id.* at 9–10), and the state court issued one on August 22, 2012, (*see* doc. 1-11 at 2–3).

After Deutsche removed the case on the basis of diversity jurisdiction, Plaintiff amended her complaint as a matter of course, adding MERS as a defendant and asserting additional causes of action. (*See* doc. 8.) She claims to be "a real party in interest and owner of the [Property]" and is allegedly "uncertain as to the true and correct ... capacity of [Defendants]." (*Id.* at 2.) She avers that the deed of trust "wrongfully classified" MERS as the "beneficiary", and MERS had "no legally recognized rights" with respect to her mortgage loan or the Property. (*Id.* at 5–6.) "[A]ll Defendants, especially Deutsche", purportedly "engaged in a scheme to induce by fraud and negligence ... [the] foreclosure of Plaintiff's residence" and "caused damage to [her]." (*Id.* at 6.) For "the past 2 years," she has "sought to determine the true sum due under the note ... so that [her] debt ... [can] be paid off in full" and the Property can be "reconveyed" to her. (*Id.*) Her efforts have failed, however, due to Deutsche's alleged refusal to give her a correct pay-off quote, allow her to "dispute" the debt, and provide her with an accounting. (*Id.* at 6–7.) As a result of Deutsche's failure to "validate the debt" and provide her with a pay off quote as required by the FDCPA, the identity of "the true holder of [the] note [and] trust deed is ... speculative and unknown." (*Id.*) Moreover, the "entity" to whom she made her mortgage payments "willfully violated the [FDCPA]" for the additional reason that her payments "were allegedly overpayments with credits" and the total amount she paid is under the note is "uncertain and disputed." (*Id.*)

Plaintiff also complains that the note was assigned to various entities, separated from the deed of trust, and ultimately securitized, making the deed of trust an "unsecured instrument." (*Id.* at 7–8.) She never received a notice of the assignment of the note and deed of trust, or of the

"securitization" of her loan. (*Id.* at 7.) Consequently, she disputes Defendants' standing to foreclose

on the Property, claiming they have "no secured interest in the [Property]." (*Id.* at 7–8.)  Because

the assignment of the note and deed of trust was never recorded or "perfected" under state law, she

asserts that MERS has "no right, power, or interest" under them. (*Id.*)  Despite having no interest

in the Property, Defendants have threatened to foreclose on it by posting a "Notice of Intent to

Foreclose." (*Id.* at 15.)

Plaintiff asserts claims against Defendants for violations of the FDCPA, the Fair Credit

Reporting Act (FCRA), the Real Estate Settlement Procedures Act (RESPA), and the Truth in

Lending Act (TILA), as well as for negligence, fraud, breach of the duty of good faith and fair

dealing, suit to quiet title, conversion, and "intentional or negligent infliction of emotional distress."

(*Id.* at 8–16.)  She seeks a TRO and a preliminary injunction to prevent Defendants from taking

possession and evicting her from the Property. (*See id.* at 8–10.)  She requests a court order "setting

aside ... the ... foreclosure sale," reinstating the note, and "quieting" her title to the Property. (*Id.*

at 10–11, 15.)  She also seeks declarations that title to the Property is "vested in Plaintiff alone", and

that Defendants "have no interest" in the Property and lack standing to foreclose on it. (*Id.* at

15–16.)  Lastly, she requests "restitution based on unjust enrichment," an accounting, $5,000,000.00

in exemplary damages, attorney's fees, and costs of suit. (*Id.* at 17–19.)

On November 11, 2012, Deutsche and MERS (collectively, Defendants) moved to dismiss

Plaintiff's complaint for failure to state a claim. (doc. 12.)  With a timely-filed response (doc. 13)

and reply (doc. 14), the motion is now ripe for recommendation.

## II.  RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6), arguing that she lacks

standing to bring this action and that her claims are barred by judicial estoppel.  (doc. 12.)

## A.      Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  The alleged facts must "raise a right to relief above the speculative level." *Id*.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

>Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
>ity, it "stops short of the line between possibility and plausibility of 'entitlement to
>relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at

570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude

the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise,

LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented

to and not excluded by the court," however, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all

the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley

Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to

dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and

are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark

Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  Lastly, it is also "clearly proper

in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst

Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.

1994). Accordingly, documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Defendants have attached to their motion to dismiss copies of what they contend are filings from Plaintiff's first lawsuit involving Deutsche as well as her two bankruptcy actions. (*See* docs. 12-1–12-10 .) These documents are matters of public record that can be judicially noticed. *See* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Because the documents attached to Defendants' motion to dismiss are subject to judicial notice, conversion of their motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n.9.

## B.     Standing

Defendants first move to dismiss Plaintiff's complaint based on her successful Chapter 7 bankruptcy case. (doc. 12 at 5–6.) Specifically, they argue that she "lacks standing to prosecute this case" against them because her claims "are property of the bankruptcy estate, and only the bankruptcy trustee has standing" to pursue them. (*See id.*)

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth*, 422 U.S. at 517–18). "The inquiry has two components: constitutional limits,[2] based on the case-and-

---

[2] "To meet the [Article III] constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 U.S. 539, 560 (5th Cir. 2001)) (alteration in *St. Paul Fire & Marine Ins. Co.*).

controversy clause in Article III of the Constitution; and prudential limits,[3] crafted by the courts."
*Id.* (citing *Raines v. Byrd,* 521 U.S. 811, 820 (1997)).  The principle that a Chapter 7 debtor lacks
standing to pursue claims belonging to the bankruptcy estate implicates only prudential standing.
*See In re Minerals Cont'l Inc.*, No. CIV.A. H-12-03099, 2013 WL 1352223, at *2 (S.D. Tex. Apr.
2, 2013).

### 1.      *Real Party in Interest*

"In bankruptcy proceedings, standing is limited to parties in interest."  *In re Cyrus II P'ship*,
358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (citation omitted).  While the U.S. Bankruptcy Code
does not define "party in interest", the Fifth Circuit has held that the term includes any creditor of
the debtor "as well as any other person with a sufficient stake in [the] outcome of a [bankruptcy]
proceeding so as to require representation."  *Int'l Transactions, Ltd. v. Embotelladora Agral
Regiomontana, S.A. de C. V.*, 347 F.3d 589, 595 (5th Cir. 2003).  The debtor, "being insolvent," has
no stake in the outcome of the bankruptcy proceeding because he "has no interest in the manner of
distribution of the assets of the estate among his creditors."  *Grain Co. v. Walker Grain Co.*, 285 F.
156, 157 (5th Cir. 1922) (citation omitted).

Section 541(a) of the Bankruptcy Code provides that "all legal or equitable interests of the
debtor in property" become property of the bankruptcy estate at the commencement of the
bankruptcy case.  11 U.S.C.A. § 541(a) (West 2010); *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997).

---

[3]  Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the
statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the
plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.  *St.
Paul Fire & Marine Ins. Co.*, 579 F.3d at 539; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).
"Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack
of prudential or statutory standing is properly granted under Rule 12(b)(6)."  *Harold H. Huggins Realty, Inc. v. FNC,
Inc.*, 634 F.3d 787, 795 (5th Cir. 2011).

Courts have uniformly held that "the definition of property of the estate [under § 541(a)] is to be interpreted broadly, and includes causes of action[4] existing at the time of the commencement of the bankruptcy action." *Drew v. Anderson*, 988 F.2d 1212, at *1 (5th Cir. 1993) (per curiam) (unpublished) (discussing the legislative history of § 541(a) and collecting cases); *In re Swift*, 198 B.R. 927, 930 (Bankr. W.D. Tex. 1996) ("It is settled law that the term 'all legal and equitable interests of the debtor in property' includes causes of action which have accrued as of the commencement of the case."). Notably, courts have also held that "[c]auses of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the bankruptcy estate." *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992), *aff'd sub nom. Lawrence v. Jackson Mack Sales*, 42 F.3d 642 (5th Cir. 1994) (collecting cases).

"Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished" and the appointed bankruptcy trustee becomes "the representative of the bankruptcy estate." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam). As such, the trustee becomes "the real party in interest,[5] and the only party with standing to prosecute causes of action belonging to the estate." *Vineyard v. BAC Home Loan Servicing, LP*, No. A-10-CV-842-LY, 2011 WL 8363481, at *4 (W.D. Tex. Dec. 28, 2011) (citing *Kane*, 535 F.3d

---

[4] A "cause of action" "is an asset or a property right ... to which [a person] [is] entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished in value, withheld or taken from him." *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 867 (5th Cir. 1971).

[5] Fed. R. Civ. P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Hatherly v. Mid-Continent Cas. Co.*, No. CIV.A. C-05-583, 2006 WL 1897266, at *2 (S.D. Tex. July 10, 2006) (citing *Wieburg v. GTE Sw., Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)). Accordingly, the claim that a debtor lacks standing to sue in this context presents the question of whether her "claims are being prosecuted by a party other than the real party in interest pursuant to" Rule 17(a). *Bath v. HSBC*, No. 12-CV-01929-RBJ-KMT, 2013 WL 2379163, at *1 (D. Colo. May 30, 2013); *accord Transload & Transp., Inc. v. Am. Marine Underwriters, Inc.*, 94 B.R. 416, 419 (E.D. La. 1988) (explaining that because the debtor's "cause of action" "became part of the debtor's estate when [the] bankruptcy proceedings were filed," the bankruptcy trustee was the "only real party in interest" and "the proper party plaintiff to bring suit [t]herein" under Rule 17(a)).

at 385 and 11 U.S.C. §§ 323, 541(a)(1)).  Unless a cause of action is either "abandoned"[6] by the trustee "or administered in accordance with the Code," it remains property of the bankruptcy estate and "the debtor has no standing to pursue [it]," even after her debts are discharged and her case is closed.  *See Drew*, 988 F.2d at *2; *see also* 11 U.S.C. § 554(d) ("[P]roperty of the estate that is not abandoned ... and that is not administered in the case remains property of the estate.").

In this case, Plaintiff filed her Chapter 7 voluntary bankruptcy petition on March 7, 2012. (doc. 12-7.)  As of that date, the Property that she listed on her schedule A as the only "real property" in which she had an ownership interest, became property of the bankruptcy estate and all of Plaintiffs' rights in it were extinguished.  *See Kane*, 535 F.3d at 385; *see also* 11 U.S.C. § 541(a). According to Plaintiff's pleadings, all of her claims in the present action arise from Deutsche's foreclosure of the Property and its subsequent attempt to evict her.  (*See* docs. 12-1 at 2; 1-5 at 2–15; doc. 8 at 5–16). Because the claims "accrued" before March 7, 2012, they also became property of the bankruptcy estate as of that date, even though she had not yet filed this action.  *See* 11 U.S.C. § 541(a); *Swift*, 198 B.R. at 930; *Lawrence*, 837 F. Supp. at 779.  Given her failure to allege or bring forth any facts showing that the bankruptcy trustee abandoned her claims, she fails to raise a reasonable inference that she is the real party in interest and has standing to pursue them.  *See Vineyard*, 2011 WL 8363481, at *5 (holding that the debtor's claims against the mortgagee arising from a foreclosure "fail[ed] as a matter of law" because they "belong[ed] to the bankruptcy estate, not [him]," and "[u]nless and until the trustee formally abandon[ed]" the claims, the trustee was "the

---

[6] "[U]pon abandonment ... the trustee is ... divested of control of the property because it is no longer part of the estate .... Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed."  *Kane*, 535 F.3d at 385. This requires affirmative action or "a clear manifestation of the trustee to abandon the claim." *Dallas Cabana, Inc.*, 441 F.2d at 867–68; *see also* 11 U.S.C. § 554(a) (requiring "[a] notice and a hearing" for the trustee to "abandon any property of the estate").  Abandonment may even require an order "or some other disposition" by the bankruptcy court.  *See Dallas Cabana, Inc.*, 441 F.2d at 868.

proper party to prosecute [them]"); *see also Drew*, 988 F.2d at *2 (to same effect).   Notably, Plaintiff's lack of standing is not affected by the bankruptcy court's July 30, 2012 order discharging her debts and closing her case because the claims remain part of the bankruptcy estate.   *See* 11 U.S.C. § 554(d); *see also Drew*, 988 F.2d at *2.

### 2.       Joinder/Substitution

Where "a court concludes that a debtor lacks standing to pursue claims in an action because he is not a real party in interest, the court may allow the bankruptcy trustee to be joined or substituted as [the] plaintiff" before dismissing the action.   *See Hatherly*, 2006 WL 1897266, at *2. Under Rule 17(a)(3), a court may not dismiss an action "for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. Rule Civ. P. 17(a)(3).   Accordingly, the bankruptcy trustee should be allowed a reasonable time to ratify, join, be substituted, or take other action with respect to Plaintiff's claims.   *See id.*; *see also Bauer v. Dean Morris, L.L.P.*, No. CIV.A. 08-5013, 2011 WL 1303814, at *6 (E.D. La. Mar. 30, 2011) (allowing the bankruptcy trustee time "to determine whether to move to substitute himself in place of [the plaintiff] as the plaintiff in [the] matter" before dismissing the plaintiff's claims on lack of standing grounds).   If the bankruptcy trustee does not intervene within the 14 days allowed for filing objections to the recommendation, or a deadline otherwise set by the Court, Plaintiff's claims should be dismissed with prejudice for failure to state a claim as they relate to her individually and for failure to prosecute  in the name of the real party in interest as they relate to the bankruptcy estate.[7]

---

[7] "[M]ost courts have interpreted [section 3] of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *Wieburg*, 272 F.3d at 308.  Nevertheless, in *Wieburg*, considering that the statute of limitations for the plaintiff's claims had run, and pointing to "Rule 17(a)'s purpose of preventing forfeitures," the Fifth Circuit held that "it was an abuse of discretion for the district court to dismiss the action without explaining why the less drastic

## C.      **Judicial Estoppel**

Defendants also move to dismiss Plaintiff's complaint on grounds that "she is judicially estopped" from prosecuting her claims against them because she failed to disclose them in her Chapter 7 bankruptcy proceeding.  (doc. 12 at 6.)

### *1.      Applicability in the Rule 12(b)(6) Context*

"Judicial estoppel is an affirmative defense."  *Abreu v. Zale Corp.*, No. 3:12-CV-2620-D, 2013 WL 1949845, at *1 (N.D. Tex. May 13, 2013) (Fitzwater, C.J.) (citations omitted).  Although affirmative defenses are generally not appropriate grounds on which to dismiss a claim under a Rule 12(b)(6) motion, the Fifth Circuit has held that "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).  Here, because the elements of judicial estoppel appear on the face of Plaintiff's complaint and in court filings that are subject to judicial notice, this affirmative defense may be properly considered for purposes of Defendants' motion to dismiss.  *See id.*; *see also Abreu*, 2013 WL 1949845, at *1 (considering judicial estoppel in the context of a motion for judgment on the pleadings under Rule 12(c), which utilizes the same standard "as the one for deciding a motion to dismiss under Rule 12(b)(6)").  As with any affirmative defense, "[t]he burden to prove judicial estoppel is on the party invoking the doctrine." *See Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837-WHB-JCS, 2006 WL 7089989, at *2 (S.D. Miss. May 31, 2006) (citing *Smith v. United States*, 328 F.3d 760, 765 (5th Cir. 2003)).

---

alternatives of either allowing an opportunity for ratification by the Trustee, or joinder of the Trustee, were inappropriate." *Id.* at 309.  Because it appears based on Plaintiff's pleadings that the events giving rise to her claims occurred before she filed her first lawsuit in October 2011, the bankruptcy trustee should be allowed the opportunity to intervene or take appropriate action to avoid any forfeiture due to the applicable statutes of limitations. *See Wieburg*, 272 F.3d at 309.

### 2.  Elements

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (en banc) (citation omitted).  Its purpose "is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Kane*, 535 F.3d at 385 (citation and internal quotation marks omitted). The doctrine "applies when (1) the position of the party to be estopped is plainly inconsistent with its previous position, (2) the court accepted the previous position, and (3) the party did not act inadvertently." *Abreu*, 2013 WL 1949845, at *2; *accord Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

### a.   Inconsistent Positions

In relation to the first element, "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999)) (emphasis in *Coastal Plains*); *see also* 11 U.S.C. § 521(a)(1).  The duty to disclose continues even after the debtor is discharged and her bankruptcy case is closed.  *See Superior Crewboats*, 374 F.3d at 335; *see also* 11 U.S.C. § 350(b) (providing for a "case [to] be reopened ... to administer assets, to accord relief to the debtor, or for other cause").  "By omitting a claim or potential claim from the applicable bankruptcy schedule(s), a debtor represents to the bankruptcy court that the claim does not exist." *Thompson*, 2006 WL 7089989, at *3 (citation omitted).  Accordingly, "if a litigant fails to disclose a pending or potential claim during a bankruptcy proceeding and later attempts to pursue that claim in a court of law, then

element one of the test for judicial estoppel is met." *Id.*

Here, in her schedule B, Plaintiff listed cash, a bank account, furniture, clothing, jewelry, and a vehicle as her "personal property." (*See* doc. 12-8 at 6–7.)  Although her claims accrued before she filed for bankruptcy, she did not list them in her schedule B, as she was required to do by 11 U.S.C. § 521(a)(1). (*Id.*)  Instead, she indicated that she had no personal property under the category of "contingent and unliquidated claims." (*See id.* at 7.)  With her nondisclosure, she informed the bankruptcy court that she had no pending or potential claims.  *See Thompson*, 2006 WL 7089989, at *3.  Because her current suit is "plainly inconsistent" with her position in her schedule B, the first element of judicial estoppel is satisfied.  *See, e.g.*, *Abreu*, 2013 WL 1949845, at *2 (holding that the plaintiff's failure to list her claim against her former employer for "unpaid overtime" in her schedule B was "plainly inconsistent" with her subsequent action involving that claim).

### b.   The Bankruptcy Court's Adoption of Plaintiff's Previous Position

As for the second element of judicial estoppel, the Fifth Circuit has explained that "[a]doption does not require a formal judgment"; rather, it requires only that the first court "adopt[] the position urged by the party, either as a preliminary matter or as part of a final disposition." *Superior Crewboats*, 374 F.3d at 335 (quotation omitted). Consequently, courts have "held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan." *Abreu*, 2013 WL 1949845, at *3 (citations omitted); *Bauer*, 2011 WL 1303814, at *5 ("Implicit in the [bankruptcy court's] order that unsecured creditors would be paid nothing [was] the bankruptcy judge's acceptance of [the] plaintiff's representations in the bankruptcy schedules ... that she had no contingent assets.").

Here, the bankruptcy court necessarily reviewed, and relied to some extent, on Plaintiff's A

15

and B schedules before confirming her bankruptcy plan and discharging her debts.  The second element is satisfied given that "implicit" in the bankruptcy court's order discharging Plaintiff's debts was the court's acceptance of her representation in her schedule B that she had no contingent or unliquidated claims, i.e., no pending or potential claims.  *See Bauer*, 2011 WL 1303814, at *5.

       c.    <u>Plaintiff's Inadvertence</u>

As to the third element, the Fifth Circuit has held that in "bankruptcy cases, the debtor's failure to satisfy [her] statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."  *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *Coastal Plains*, 179 F.3d at 210).

       i.    *Plaintiff's Knowledge of her Claims*

"A plaintiff has knowledge of a claim whenever she knows the facts that give rise to the claim."  *Abreu*, 2013 WL 1949845, at *3 (citing *Jethroe*, 412 F.3d at 601).  Notably, the debtor's "awareness of [her] statutory disclosure duty is ... not relevant to the question of judicial estoppel"; all that matters is her awareness "of the facts giving rise to her claim."  *Kamont v. West*, 83 Fed. App'x 1, 3 (5th Cir. 2003) (per curiam).  Neither does the "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to [the bankruptcy court's] confirmation to suggest that [she] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Thompson*, 2006 WL 7089989, at *3 (citations omitted).

In her October 19, 2011 action, Plaintiff asserted a "wrongful foreclosure" claim against Deutsche.  (*See* docs. 12-1 at 2; 12-2.)  In her current suit, she alleges that Deutsche "entered the picture after [she] refinanced [the Property] in 2006."  (doc. 1-5 at 8.)  She claims that Deutsche

"wrongfully foreclosed on the Property and has since sued [her] for forcible detainer." (doc. 8 at 8.) One such suit occurred in June 2011, where the County Court rendered judgment in Plaintiff's favor and awarded her "continued possession" of the Property. (*See* docs. 1-5 at 8; 8 at 6–8; 12-1 at 7.) She also complains that for "the past 2 years," she has "sought to determine the true sum due under the note ... so that [her] debt ... [can] be paid off" and she can recover title to the Property. (doc. 8 at 6.) Because Plaintiff's pleadings, together with the documents attached to Defendants' motion to dismiss, indicate that she was aware of the facts giving rise to her claims before she filed for bankruptcy on March 7, 2012, she had "knowledge" of her claims before that date for purposes of judicial estoppel. *See Superior Crewboats*, 374 F.3d at 335; *Kamont*, 83 Fed. App'x at 3.

Even assuming for purposes of this motion that Plaintiff did not know of her claims until she filed the instant lawsuit, Plaintiff could have fulfilled her on-going obligation to disclose her pending claims by seeking to re-open her bankruptcy case and amend her schedule B. *See Abreu*, 2013 WL 1949845, at *3 (explaining that the plaintiff "undoubtedly had knowledge of [her] claim after she filed [her] suit, yet she failed to amend her bankruptcy plan, despite [her] ongoing obligation to do so"); *see also* 11 U.S.C. §§ 350(b)11, 521(a)(1). Defendants have therefore satisfied the "knowledge" sub-element of the "inadvertence" test.

### ii.     *Plaintiff's Motive to Conceal her Claims*

In *Love*, the Fifth Circuit stated that "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of [the] potential financial benefit resulting from the nondisclosure." *Love*, 677 F.3d at 262 (quoting with approval *Thompson*, 2006 WL 7089989, at *4). Also in *Love*, which involved a motion for summary judgment, the Court stated that "whether a debtor's failure to

17

disclose claims was inadvertent presents a question of fact," but it went on to cite *Superior Crewboats*, which was decided in a Rule 12(b)(6) context, and reaffirmed its finding in that case "that [the] debtors had a motivation to conceal" their claims because "they stood to 'reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.'" *Id.* (citing *Superior Crewboats*, 374 F.3d at 336).

In *Superior Crewboats*, the plaintiffs filed a personal injury suit against a maritime company "while their bankruptcy case was still pending." *Superior Crewboats*, 374 F.3d at 333. They informed the bankruptcy trustee about their claim but incorrectly stated that it was barred by the statute of limitations, and as a consequence, the trustee abandoned the claim. *Id.* Although the plaintiffs later sought to "re-open the bankruptcy proceeding and amend their petition" to account for the actually viable claim, the Fifth Circuit denied leave, finding that they had the "requisite motivation to conceal the claim" at the time they filed their lawsuit. *Id.* at 335–36. The Court reversed the district court's denial of the maritime company's motion to dismiss, holding "that judicial estoppel bar[red] the [plaintiffs'] personal injury suit as a matter of law." *Id.* at 336.

Noting the apparent tension between the *Love* and *Superior Crewboats* opinions, the Court in *Abreu* explained that "[i]f inadvertence is a fact issue, it is unclear how *Superior Crewboats* could have reversed the district court's denial of a Rule 12(b)(6) motion based on judicial estoppel in the absence of the plaintiff[s'] pleadings or judicially-noticed documents that clearly showed [their] subjective intent." *Abreu*, 2013 WL 1949845, at *5. Relying on *Superior Crewboats*, and noting that "it controls over *Love* to the extent they are inconsistent,"[8] the *Abreu* Court held that the

---

[8] In the Fifth Circuit, if "two panel decisions are in conflict, the earlier opinion controls." *Abreu*, 2013 WL 1949845, at *5 n. 3 (citing *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237 (5th Cir. 2009); *see also In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991) (explaining that "[i]n this Circuit, one panel may not overrule the decision—right or wrong—of a prior panel, absent en banc reconsideration or a superseding contrary decision of the Supreme Court").

defendant employer "ha[d] established the [motive] [sub-element] of judicial estoppel" "based on [the plaintiff's] complaint and documents that the court [could] judicially notice" because the plaintiff "would have reaped a windfall had she been able to recover on her claim without disclosing it to the bankruptcy court." *Id.* at *4–5. In *Thompson*, also relying on *Superior Crewboats*, the Court likewise held that the defendant had established the plaintiff's "motive to conceal" sub-element for purposes of its motion to dismiss because the plaintiff "clearly would have benefitted from omitting [his] discrimination claim from [his] Schedule B" by "receiv[ing] the fruits of [the] claim" at the expense of his creditors. *Thompson*, 2006 WL 7089989, at *5–6.

Here, the bankruptcy court discharged Plaintiff's debts and stated that its order did "not determine how much money, if any, the trustee [would] pay [her] creditors." (doc. 12-10 at 2–3.) Among the relief she now seeks for her claims is a court order canceling the foreclosure and restoring her title to the Property, $5,000,000.00 in punitive damages, statutory damages, and "restitution of [her] down payment ... [and] ... escrow overpayment." (doc. 8 at 9–11, 19.) There can be no dispute that she would "reap a windfall" if she prevailed in her suit and obtained relief without having accounted for it in her bankruptcy case. Accordingly, Defendants have established the "motive to conceal" sub-element of the inadvertence test based on Plaintiff's pleadings and the filings attached to their motion to dismiss. *See Abreu*, 2013 WL 1949845, at *5; *Thompson*, 2006 WL 7089989, at *5–6.

In conclusion, Defendants have met their burden to establish the affirmative defense of judicial estoppel. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" "to protect the integrity of the judicial process." *Reed*, 650 F.3d at 574 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). "Because the doctrine is equitable in nature, it should be

applied flexibly, with an intent to achieve substantial justice," and its application "should be guided by a sense of fairness, with the facts of the particular dispute in mind." *Abreu*, 2013 WL 1949845, at *5 (citing *Reed,* 650 F.3d at 574). Its application " is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal on that undisclosed asset." *Jethroe*, 412 F.3d at 600; *Kane*, 535 F.3d at 386. The doctrine "must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed*, 650 F.3d at 574. Allowing the plaintiffs to proceed with previously undisclosed claims would produce the inequitable result of permitting "debtors to '[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights.'" *Superior Crewboats*, 374 F.3d at 336 (quoting *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)) (alterations in *Superior Crewboats*). This would be the result in this case if Plaintiff were to recover against Defendants at the expense of her creditors whose claims were discharged in her bankruptcy action. Accordingly, Defendants' motion to dismiss should be granted, and all of Plaintiff's claims against them should be dismissed with prejudice for failure to state a claim as they relate to her individually.[9]

## III.  RECOMMENDATION

If the bankruptcy trustee intervenes in the action within the 14 days allowed for filing objections to the recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED in part and DENIED in part,** and Plaintiff's claims against them, as they relate to Plaintiff individually, should be **DISMISSED** with prejudice but the claims should

---

[9] Defendants do not argue that judicial estoppel also bars the bankruptcy trustee from pursuing Plaintiff's claims on behalf of the bankruptcy estate.

be allowed to proceed as they relate to the bankruptcy estate.  If the bankruptcy trustee does not intervene, however, Defendants' motion to dismiss should be **GRANTED** in its entirety and Plaintiff's claims, as they relate both to Plaintiff individually and to the bankruptcy estate, should be **DISMISSED** with prejudice.

**SO RECOMMENDED on this 5th day of July, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE